The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Roger Dillard. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The plaintiff sustained a compensable injury by accident on January 16, 1992, specifically a back injury which arose out of and in the course and scope of her employment. As a result of her compensable injury by accident, plaintiff and her employer entered into a Form 21 Agreement for Temporary Total Disability Compensation for the period of January 24, 1992 through February 3. 1992. Thereafter, the plaintiff and her employer entered into a Form 26 Supplemental Agreement for Compensation for a ten percent permanent partial disability of the back. That Form 26 Agreement was entered by the parties on March 1, 1993 and approved by the Industrial Commission on March 8, 1993. Both agreements for compensation are incorporated into the record of this hearing. As set forth in the agreements for compensation, the plaintiff's average weekly wage is $368.11 yielding a compensation rate of $245.42.
2. The parties stipulated into evidence medical records of Dr. Robert Meyer and a package of stipulated exhibits containing the following: (1) I.C. Forms 31, 16 and 28B; employee time sheets from March 1993 through March 1994; Caswell Center forms and correspondence; notes of Dr. Edwin B. Cooper, Jr.; notes of Dr. Ira M. Hardy; notes of Dr. Rudolph J. Maier; and radiology reports.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a 54-year-old female with a date of birth of February 15, 1941. She was employed full-time as a developmental technician at Caswell Center since January 1991.
2. Plaintiff suffered a compensable back injury on January 16, 1992 when she was pushed by a patient and fell to the floor. She was out of work from January 24, 1992 through February 3, 1992, for which she was paid temporary total disability.
3. On February 4, 1992 plaintiff was returned to light duty by Kinston Orthopaedics, which was only 19 days following her original on-the-job injury. She was also referred to Lenoir Memorial Hospital for physical therapy. She continued to see Dr. Cooper of Kinston Orthopaedics, and on May 12, 1992 she received a triggerpoint injection with Dalalone and Xylocaine because of continuing pain in right low back radiating into the leg with intermittent numbness in the right leg.
4. On May 26, 1992 Dr. Cooper recommended that plaintiff continue light duty with no prolonged standing or sitting. Ms. Brewington continued to work with restrictions from Dr. Cooper and she continued to see him periodically until February 4, 1993. Dr. Cooper's February 4, 1993 note stated: "I also recommend permanent modification in her duties at Caswell so that she does not lift over 50 pounds, does not do the PIC hold, but would leave it up to her and her supervisor about pushing wheelchairs . . . in my opinion she has a five percent permanent partial impairment of the back due to neck strain, with radiculitis of the left arm and five percent permanent partial impairment to her back due to lumbosacral strain with radiculitis of the right leg." Plaintiff continued to work at Caswell with these restrictions.
5. A Form 26 Agreement was entered by the parties on March 1, 1993 and approved by the Industrial Commission on March 8, 1993, paying plaintiff ten percent permanent partial disability of the spine.
6. In October 1993 plaintiff wrote a letter to the Industrial Commission requesting that she have assistance in dealing with medical bills for the treatment of her back and arm pain as a result of her original on-the-job compensable accident, and also complaining that her employer refused to pay her medical bills. In December 1993 plaintiff filed her own Form 33 requesting a hearing, complaining that the employer had refused to pay medical bills and stating that she had to work contrary to her medical restrictions.
7. On April 28, 1994 plaintiff submitted a Form 33 through counsel alleging a change of condition.
8. Dr. Rudolph Maier, a neurologist, saw plaintiff on August 12, 1992 on referral from Dr. Edwin Cooper. On February 13, 1993 Dr. Maier saw her a second time and found that she had a good deal of neck and shoulder pain and he did an electrical exam and found some abnormalities consistent with a nerve root injury at C-8 and T-1. He suggested to Dr. Cooper an imaging examination. At the third examination on February 21, 1994 he thought her arm and neck pain was radicular, as it had a shooting and stabbing quality to it. He states, "What I was concerned about was the question of whether she was developing a spinal cord compression and so I recommended an MRI, a magnetic scan." According to Dr. Maier, a cervical MRI of the spine was done on February 22, 1994 by Dr. Linda Geer-Benton. This was the first time an MRI had been done and a frank disk herniation at C5-6, a ruptured disk causing compression of the spinal cord, along with other disk herniations, were present. At that time he referred plaintiff to Dr. Ira Hardy.
9. Dr. Ira Hardy ordered a lumbar and cervical myelogram, and according to his office note of March 18, 1994 the cervical portion of the myelogram revealed a C5-6 disk defect. Dr. Hardy further stated, "In view of the fact that this patient has some degree of nerve root compression at C5-6 on the left side, she will probably require surgical treatment for this problem." However, on March 18, 1994 Dr. Hardy wrote a letter "To Whom It May Concern," in which the second full paragraph is as follows: "I do not believe this patient's discomfort at this time warrants operative treatment and I strongly recommend that attempts be made to reassign her to less strenuous duties so that, hopefully, she can avoid operative treatment for this problem."
10. In March 1993 plaintiff was transferred from a behavior unit to foundation care. The residents were totally dependent and she described having to constantly lift, bend and pick up patients out of wheelchairs and put them into bed. Plaintiff stated that her symptoms continued to worsen in 1993 after she had been rated and she went to Ms. Raynor to ask her if she could have lighter duty work. Plaintiff stated that by July 1993 she could hardly use her hand. She stated that in September 1993 she went to her family physician, Dr. Robert Meyer, and he gave her a note that she was restricted to lifting 15 pounds and nothing repeatedly. She took this note to her employer in September 1993.
11. Plaintiff testified that after seeing Dr. Ira Hardy he had given her a note to stay out of work until March 31, 1994. She had also been seen by Dr. Rudolph Maier and he had given her restrictions of lifting no more than 15 pounds and none repeatedly. On March 31, 1994 she went back to her place of employment and took those restrictions. Her supervisor, Ms. Raynor, informed her they could not honor those restrictions, as Dr. Meyer was not their chosen doctor, and Ms. Raynor rewrote the slip saying that plaintiff could lift up to 50 pounds. At that point plaintiff wrote out her resignation letter because she could not do the work the employer was insisting that she do. Plaintiff testified she had not been able to work or secure a job since that time.
12. The plaintiff has sustained a substantial change in her condition which resulted in her being unable to work after March 1994, and this substantial change in condition entitles her to additional workers' compensation benefits. The greater weight of the medical evidence in this case has established that the plaintiff suffers from a substantial change in condition. Plaintiff's condition is evidenced by increased inability to do her work, greater work restrictions, increased signs of disc disease, a radiographically proven cervical disc herniation, and a greater impairment rating.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The evidence in this case supports the plaintiff's claim that she sustained a substantial change in her condition and as a result she is entitled to additional disability compensation benefits. N.C.G.S. § 97-47.
2. Plaintiff is entitled to temporary total disability benefits from March 13, 1994 and continuing at a rate of $245.42 per week so long as she remains totally disabled by her change of condition. N.C.G.S. § 97-29.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. The plaintiff's claim for workers' compensation benefits based upon her substantial change in condition must under the law be and the same is hereby GRANTED.
2. Plaintiff is entitled to temporary total disability benefits from March 13, 1994 and continuing at a rate of $245.42 per week so long as she remains totally disabled by her change of condition.
3. The defendants shall pay all accrued and future medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same have been submitted to her employer for payment. Plaintiff shall continue to receive medical compensation so long as her medical treatment is designed to effect a cure, give relief or to lessen her period of disability as the same is causally related to her January 16, 1992 injury by accident.
4. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the above award and forwarded directly thereto. For the balance of her fee defendant-carrier shall forward every fourth compensation check payable directly to plaintiff's counsel.
5. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 8/4/95